UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. JEAN KENDALL,<br><br>                Plaintiff,<br><br>   -against-<br><br>THE MANHASSET UNION FREE SCHOOL DISTRICT,<br><br>             Defendant. | **COMPLAINT**<br><br>Case No.:_____<br><br>Hon.: _____ |

Plaintiff Dr. Jean Kendall (hereinafter "Plaintiff"), by and through her attorneys, the Law Offices of G. Oliver Koppell & Associates, complains of the above-named Defendant, and alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff is a 78-year-old female who worked in various capacities within the Defendant Manhasset Union Free School District from 1988 until her constructive discharge on or about October 1, 2020. In her latest capacity as Assistant Superintendent for Human Resources, Plaintiff was subjected to age-based discrimination, gender-based discrimination, sexual harassment, retaliation, and a hostile work environment. This treatment primarily came from Superintendent Dr. Vincent Butera ("Dr. Butera") and Deputy Superintendent for Business and Operations Rosemary Johnson ("Ms. Johnson").

2.  Plaintiff was fraudulently induced to leave the position she had as Principal of Munsey Park Elementary School ("Munsey Park"), located in Manhasset, New York, a position she loved, for what was represented to her as a "promotion." However, she would come to realize that her new job offer was simply a ploy by Dr. Butera, Ms. Johnson, and others, to remove her as Principal and ultimately replace her with a much younger person.

1

3. Plaintiff now complains, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII") and The Age Discrimination in Employment Act of 1967, 29 U.S.C § 621, *et seq.* ("ADEA"), seeking damages to redress the injuries she suffered as a result of being discriminated against on the basis of gender and age, as well as subjected to a hostile work environment, and retaliated against.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. 2000e-5(f) and 28 U.S.C. § 1331.

5. This Court has subject matter jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C § 633a(c) and 28 U.S.C. § 1331.

6. Plaintiff filed a timely charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about June 22, 2021. By letter dated July 21, 2022, the EEOC provided Plaintiff with a Notice of Right to Sue.  A copy of such letter is attached as "Exhibit A."

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the defendant resides and regularly does business in this district and because a substantial part of the acts and omissions giving rise to this action occurred in this district.

## PARTIES

8. At all relevant times herein, Plaintiff was and is a resident of Nassau County in the State of New York.

9. Defendant Manhasset Union Free School District (hereinafter "Defendant" or "District") is a municipal corporation duly incorporated and existing under the laws of the State of New

York. At all relevant times herein, Dr. Butera and Ms. Johnson are and were servants, agents, and/or employees of Defendant.

## FACTUAL ALLEGATIONS

10. Plaintiff became the Principal of Munsey Park in on or around October 1995.

11. In her capacity as Principal of Munsey Park, Plaintiff did an exemplary job and received much positive feedback from students, parents, and colleagues. Plaintiff was very happy in this position and did not have any desire to leave.

12. Plaintiff was approached, in or around January of 2018, by Dr. Butera and Ms. Johnson, to take the position of Assistant Superintendent for Human Resources for Defendant beginning with the 2018-2019 school year.

13. Plaintiff was hesitant to leave her position as Principal, however she received significant pressure from Dr. Butera, District Trustee and School Board President Regina Rule ("Ms. Rule"), and others, to do so. Upon information and belief, Dr. Butera pressured Plaintiff to leave so that he could replace her with a younger person.

14. Plaintiff feared that she was only being asked to take over the new position as a ploy to replace her and that her influence would be minimal in her new position.

15. Despite the fact that she loved being a Principal and that she had some trepidations about such a position change, Plaintiff eventually consented to the position change.

16. Plaintiff's consent to the position change was given as a result of the representations made by Dr. Butera, among others, about the position of Assistant Superintendent for Human Resources as well as the job description of such position that was presented to her.

17. On or about March 1, 2018, Plaintiff and Defendant executed an employment contract ("The Contract") in connection with Plaintiff's move to the Assistant Superintendent for Human Resources position.

18. The Contract states under "Duties," that, "The Assistant Superintendent shall have overall supervisory responsibility for the District's human resources policies, procedures, programs and services, including, but not limited to, staff needs assessment, recruitment, staffing, screening and certification; selection of highly qualified professional candidates and qualified staff; placement on salary and benefits schedules; orientation and mentoring, coaching, retention of such highly qualified personnel; and monitoring the performance evaluation system."

19. Plaintiff was ultimately replaced as Principal of Munsey Park by Chad Altman ("Mr. Altman"). Mr. Altman is a male who is in his 40's.

20. While Plaintiff thought she would be performing substantive work in her new position, the reality is that she was treated as though she was the clerk for Ms. Johnson. Furthermore, Plaintiff began to realize that her new work environment was hostile.

21. Beginning almost immediately upon her start as Assistant Superintendent for Human Resources, Plaintiff was subjected to frequent misogynistic comments, belittling, disparate treatment, sexual harassment, and abuse by Dr. Butera.

22. Plaintiff was also placed in a subsidiary position relative to Ms. Johnson and told to report to Ms. Johnson.

23. Ms. Johnson was not an educator and did not have a background in education. Ms. Johnson frequently disrupted Plaintiff's job duties, she frequently belittled Plaintiff, and she unreasonably prevented Plaintiff from doing her job.

24. Ms. Johnson would frequently remark to Plaintiff that, "Nothing is approved here until I approve it."

25. Ms. Johnson, with Dr. Butera's support, acted in a dismissive and demeaning manner towards Plaintiff. This had the effect of destroying Plaintiff's morale and limiting her authority to the point where Plaintiff felt as if she was Ms. Johnson's clerk.

26. Ms. Johnson remarked sarcastically to Plaintiff in or around the Spring of 2020, "You're still here?" Upon information and belief, such comment was made in reference to Plaintiff's age with respect to the fact that she had not retired yet.

27. Despite the efforts to minimize her role, Plaintiff was never insubordinate. She always carried out her duties as asked or directed. She additionally would often express her professional judgment.

28. To make matters worse, while Ms. Johnson was demeaning Plaintiff and usurping her authority, Dr. Butera engaged in a course of conduct that was highly inappropriate and had the effect of bringing sex into the workplace.

29. Dr. Butera frequently behaved inappropriately, engaging in sexually related conduct and making demeaning and sexually related remarks towards others. Students, teachers, parents, and administrators, including Plaintiff, frequently objected to this conduct.

30. Such objections culminated in the conclusion, by an independent investigator hired by the District Board of Education, in or around November of 2020, that Dr. Butera violated the District anti-sexual harassment policy with regard to a colleague of Plaintiff.

31. In or around March 2019, the District supported an event with the Tower Foundation of Manhasset, Inc. During this event, which was themed after the notorious Studio 54 nightclub, a scantily clad pole dancer was hired to perform. Dr. Butera compared Plaintiff to the pole dancer,

remarking to her, "Can you do that?" while gesturing towards the pole dancer. This comment made Plaintiff feel extremely uncomfortable. Plaintiff informed Dr. Butera, in that moment, that she was highly offended by his comment and that such comment was inappropriate in a work environment. Nevertheless, Dr. Butera's sexually offensive conduct did not cease.

32. In or around July 2019, Dr. Butera told a story to Plaintiff about how he had placed an inflatable sex doll on top of a school building in another district in which he worked.

33. In or around March 2020, Dr. Butera touched Plaintiff's hair without her consent during a meeting with administrators.

34. In or around April 2020, Dr. Butera texted Plaintiff a sexually explicit animated image that featured a half-naked man gyrating.

35. Dr. Butera would frequently play the song "I'm Too Sexy," by Right Said Fred, in the presence of Plaintiff. This had the effect of bringing sex into the workplace and made Plaintiff extremely uncomfortable.

36. Dr. Butera would routinely lock the door to his office when Plaintiff was meeting with him alone, despite the fact that he had no reasonable or defensible reason to do so. This had the effect of making Plaintiff extremely uncomfortable as she did not feel safe being locked in a room alone with him.

37. Dr. Butera would also make demeaning comments related to Plaintiff's age.

38. Dr. Butera would frequently remark to Plaintiff's colleagues, in earshot of Plaintiff, "would you want to work into your 70's?" Upon information and belief, this comment was made to demean and/or belittle Plaintiff, who was working in her 70's at the time.

39. Dr. Butera would often give Plaintiff contradictory instructions making it impossible to perform tasks without violating at least part of the instructions. Upon information and belief, this was done to make Plaintiff's work environment intolerable.

40. Dr. Butera would frequently ask Plaintiff's colleagues, in earshot of Plaintiff, how old certain third-party colleagues were and when those third-party colleagues were planning to retire.

41. Dr. Butera would also scream and yell at Plaintiff, frequently belittling her and subjecting her to other verbal abuse.

42. In or around the Spring of 2020, Dr. Butera screamed at Plaintiff in an overtly hostile and intimidating manner after Plaintiff reported to Dr. Butera certain concerns raised by administrative staff affiliated with the Defendant related to their request to roll over unused vacation time in light of the Covid-19 Pandemic and the recent death of a colleague.

43. In or around June of 2020, Dr. Butera screamed at Plaintiff during a remote meeting in front of Plaintiff's colleagues and wrongfully accused Plaintiff of fabricating a Nassau County Department of Health statement. This had the effect of humiliating Plaintiff in front of her colleagues.

44. In or around November of 2017, Dr. Butera mocked Plaintiff in front of students and colleagues as she participated in a Thanksgiving related classroom exercise with first grade students and their teacher, Ms. Ricken, a teacher at Munsey Park. In the course of such conduct, Dr. Butera mocked Plaintiff by referring to her as "Ms. Kendall," not "Dr. Kendall," as she was typically called.

45. Dr. Butera would frequently stand menacingly in a very close manner to Plaintiff when speaking to her. Upon information and belief, this was done to intimidate her.

46. Dr. Butera would threaten to "embarrass" Plaintiff if she contradicted him or did not strictly obey him.

47. In or around July 2020, Dr. Butera remarked about the two finalist candidates for the open position of Classroom Teacher within the District, that, "I will go with Josh [male candidate], because he is a man." Upon information and belief, this comment was indicative of Dr. Butera's bias and unfairness against women in the workplace.

48. In connection with Dr. Butera's inappropriate conduct, Plaintiff engaged in the protected work activity of raising concerns regarding such behavior with Ms. Rule and District Counsel Florence Frazier. In retaliation for such complaints, Dr. Butera sought to minimalize Plaintiff's role even further.

49. In response to Plaintiff's complaints in relation to his conduct, Dr. Butera reassigned many of Plaintiff's job responsibilities to Plaintiff's much younger colleagues.

50. In or around May of 2019, Dr. Butera hired a friend of his, Gaurav Passi ("Dr. Passi") to the position of Assistant Superintendent for Curriculum and Instruction. Dr. Passi is a male, who upon information and belief, was in his 40's at the time of his hiring. Over time, Dr. Butera transferred many of Plaintiff's job responsibilities to the younger Dr. Passi. This prominently includes attending union meetings regarding working hours and conditions. This was done despite the fact that Plaintiff's employment contract specifically stated that Plaintiff was to participate in such matters.

51. Dr. Butera also isolated Plaintiff from certain planning meetings that she was contractually obligated to attend.

52. In response to Plaintiff's Complaints raised related to Dr. Butera's conduct, Plaintiff's access to her work email was cut off in by agents, servants, and/or employees of the Defendant in or around August of 2020. This unreasonably interfered with her ability to perform her job.

53. After Plaintiff's work email was cut off, she attempted to visit her office to retrieve her personal belongings, but she was prevented from doing so.

54. On or about September 11, 2020, Jennifer Carlson, Deputy General Counsel for the School Administrators Association of America of New York, wrote a letter on Plaintiff's behalf, to Defendant to provide them notice of Plaintiff's claims related to the discrimination she faced. Notice of such claims was provided again via a letter from Plaintiff's husband, James P. Duffy III, on or about September 14, 2020.

55. Unable to cope with the frequent discrimination, constant belittling, and hostile work environment she was being subjected to, Plaintiff suffered a constructive discharge when she retired on or about October 1, 2020.

## AS AND FOR A FIRST CAUSE OF ACTION FOR GENDER BASED DISCRIMINATION IN VIOLATION OF IN VIOLATION OF TITLE VII

56. Plaintiff re-alleges and incorporates all the facts and allegations expressed above in Paragraphs 1-55 as if more fully alleged and incorporated herein.

57. Dr. Butera's aforementioned comments and conduct that belittled Plaintiff, embarrassed her, harassed her, and made her feel uncomfortable was made and done on the basis of her gender.

58. Dr. Butera did not belittle, embarrass, harass, or make Plaintiff's male colleagues feel uncomfortable in the same manner as he did towards Plaintiff.

9

59. The decision to strip Plaintiff of her contractual responsibilities was made and done on the basis of her gender.

60. Any reason advanced by the Defendant for the treatment of Plaintiff is a pretext for discrimination. Plaintiff's membership in a protected class was the reason for this disparate treatment, harassment, and discrimination.

61. The foregoing acts of agents, servants, and or employees of the above Defendant constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

62. The actions of Dr. Butera were wanton and reckless, with malice, and without reason or basis, and were arbitrary, capricious and unfounded.

63. By reason of the foregoing, Plaintiff has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## AS AND FOR A SECOND CAUSE OF ACTION FOR SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

64. Plaintiff re-alleges and incorporates all the facts and allegations expressed above in Paragraphs 1-63 as if more fully alleged and incorporated herein.

65. Dr. Butera's aforementioned comments and conduct that belittled Plaintiff, embarrassed her, harassed her, and made her feel uncomfortable created an intimidating working environment that was discriminatory and altered the conditions of Plaintiff's employment.

66. Dr. Butera's aforementioned comments and conduct that belittled Plaintiff, embarrassed her, harassed her, and made her feel uncomfortable created a workplace that included physical intimidation and discriminatory intimidation for Plaintiff.

67. Dr. Butera's constant belittling of Plaintiff, because she is a woman, in combination with his aforementioned frequents acts which operated to bring sex into the workplace, created a workplace environment filled with discriminatory conduct and humiliation that reasonable people would find discriminatory and hostile.

68. Dr. Butera's belittling comments directed towards Plaintiff created a workplace filled with ridicule, insult, and mockery.

69. Dr. Butera's misogynistic and demeaning comments detailed herein created an abusive work environment filled with discriminatory conduct.

70. Defendant's actions to strip Plaintiff of her contractual responsibilities unreasonably interfered with Plaintiff's work performance.

71. The decision to remove Plaintiff's access to her work email in or around August 2020 unreasonably interfered with Plaintiff's work performance.

72. The foregoing acts of agents, servants, and or employees of the above Defendant constitute a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

73. The actions of Dr. Butera were wanton and reckless, with malice, and without reason or basis, and were arbitrary, capricious and unfounded.

74. By reason of the foregoing, Plaintiff has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## AS AND FOR A THIRD CAUSE OF ACTION FOR AGE DISCRIMINATION IN VIOLATION OF THE ADEA

75. Plaintiff re-alleges and incorporates all the facts and allegations expressed above in Paragraphs 1-74 as if more fully alleged and incorporated herein.

76. Dr. Butera's and Ms. Johnson's aforementioned comments and conduct that belittled Plaintiff with regard to her age were made and done on the basis of her age.

77. The decision to fraudulently induce Plaintiff to leave her job as Principal of Munsey Park, and then replace her with a much younger person, was made and done on the basis of her age.

78. The decision to strip Plaintiff of her contractual responsibilities and reassign them to a forty-year-old male was made and done on the basis of her age.

79. Dr. Butera and Ms. Johnson did not belittle Plaintiff's younger colleagues in the same manner that they belittled Plaintiff.

80. Any reason advanced by the Defendant for the treatment of Plaintiff is a pretext for discrimination. Plaintiff's membership in a protected class was the reason for this disparate treatment, harassment, and discrimination.

81. The foregoing acts of the Defendant, through their agents, servants, and/or employees, constituted unlawful age-based discrimination in violation of The Age Discrimination in Employment Act of 1967, 29 U.S.C § 621, *et seq.*

82. The actions of Dr. Butera and Ms. Johnson were wanton and reckless, with malice, and without reason or basis, and were arbitrary, capricious and unfounded.

83. By reason of the foregoing, Plaintiff has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF TITLE VII AND THE ADEA

84. Plaintiff re-alleges and incorporates all the facts and allegations expressed above in Paragraphs 1-83 as if more fully alleged and incorporated herein.

85. Dr. Butera's frequent bullying and belittling, as well his comments that implied that someone over the age of 70 should no longer be working, created a fear of adverse action while performing a protected work activity.

86. Defendant's decision to strip Plaintiff of her responsibilities after she engaged in the protected work activity of complaining about the discrimination she was being subjected to, constituted an adverse employment action.

87. Defendant's decision to remove Plaintiff's access to her work email after she engaged in the protected work activity of complaining of complaining about the discrimination she was being subjected to, constituted an adverse employment action.

88. The foregoing acts of the Defendant, through their agents, servants, and/or employees, constitute retaliation in violation of The Age Discrimination in Employment Act of 1967, 29 U.S.C § 621, *et seq.*

89. The foregoing acts of agents, servants, and or employees of the above Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*

90. The actions of Dr. Butera were wanton and reckless, with malice, and without reason or basis, and were arbitrary, capricious and unfounded.

91. By reason of the foregoing, Plaintiff has suffered loss of income and was caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

### **JURY DEMAND**

92. Plaintiff hereby demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff respectfully requests the court to grant the following relief:

1.  On the First Cause of Action, directing Defendant to pay Plaintiff compensatory and punitive damages in the amount of five hundred thousand dollars ($500,000.00);

2.  On the Second Cause of Action, directing Defendant to pay Plaintiff compensatory and punitive damages in the amount of five hundred thousand dollars ($500,000.00);

3.  On the Third Cause of Action, directing Defendant to pay Plaintiff compensatory and punitive damages in the amount of five hundred thousand dollars ($500,000.00);

4.  On the Fourth Cause of Action, directing Defendant to pay Plaintiff compensatory and punitive damages in the amount of five hundred thousand dollars ($500,000.00);

5.  Awarding Plaintiff reasonable attorney's fees and costs; and

6.  Granting such other and further relief as this Court deems necessary and proper.


Dated: New York, New York
       October  10  , 2022

                                    **LAW OFFICES OF G. OLIVER**
                                    **KOPPELL & ASSOCIATES**


                                    By: _____
                                         G. Oliver Koppell
                                         Scott Doherty
                                         *Counsel for Plaintiff*
                                         99 Park Avenue, Suite 1100
                                         New York, New York 10016
                                         Telephone: (212) 867-3838
                                         Facsimile:  (212) 681-0810